BOARD OF COMMISSIONERS OF WESTON COUNTY v. BLAKELY.
(No. 664.)

BOARD OF COMMISSIONERS OF WESTON COUNTY v. NOLAN.
(No. 665.)

BOARD OF COMMISSIONERS OF WESTON COUNTY v. QUEST.
(No. 666.)

COUNTIES—COUNTY BOARD—COMPENSATION OF COMMISSIONERS—
OFFICIAL BUSINESS — STATUTES — CONSTRUCTION — WORDS AND
PHRASES—PUBLIC OFFICERS—MILEAGE.

1. The principle that the commissioners of a county can only act as a board in transacting the county business does not necessarily control the question of their per diem compensation, for the legislature might allow a per diem for time actually and necessarily employed upon public business when

the board is not in session, and they might also compensate for time actually and necessarily employed in going to and returning from board meetings; the principle is, however, proper to be considered in determining the meaning and effect of the statutory provision allowing a commissioner a per diem compensation "for each day actually employed in the discharge of the duties of his office."

2. The intent of a statute should be ascertained by reading it according to the natural and obvious import of the language without resorting to subtle and forced construction for the purpose of either limiting or extending its operation.

3. In determining the meaning of the language employed in the statute allowing a county commissioner a per diem compensation "for each day actually employed in the discharge of the duties of his office," the statute should be read in connection with other pertinent provisions, if any, and the conditions which must have been considered when it was enacted.

4. When a public officer is required by law to travel away from his home or the place of his official residence to perform an official act, such travel and also in returning is on public business, though more time may be necessarily occupied in such travel than in the actual transaction of the business which has required it, and it is not a misuse of language to say that all the time so occupied is employed in performing the duty imposed.

5. Mileage is compensation allowed by law to officers for their trouble and expenses in traveling on public business, it being essential, however, that authority for the payment of such compensation by the day or otherwise be found in the statute.

6. Under the provisions of the statute allowing a county commissioner a per diem compensation of $5 per day "for each day actually employed in the discharge of the duties of his office," in addition to an annual salary of $200, a commissioner is entitled to the prescribed per diem compensation for the time actually and necessarily employed in going to and returning from regular and special meetings of the county board.

7. The provisions of the statute (Comp. Stat. 1910, sec. 1165) that county commissioners shall not receive compensation for any time over four days at regular sessions, or over two days at special sessions, limits the per diem compensation to the stated number of days in attendance at sessions, and

does not apply to the time employed by a commissioner in traveling to and returning from the sessions.

[Decided April 25, 1912.]                    (123 Pac. 72.)

ERROR to the District Court, Weston County; HON. CARROLL H. PARMELEE, Judge.

The Board of County Commissioners of Weston County brought three separate actions against J. E.. Blakely, John Nolan and J. B. Quest, respectively, to recover from each certain money which had been paid upon a claim presented by them respectively as per diem compensation for time employed by them as County Commissioners in going to the county seat to attend regular and special meetings of the County Board, and in returning therefrom to their respective homes. A general demurrer to the petition was sustained in each case and the actions were thereupon dismissed. From such judgments the plaintiff prosecuted error. The other material facts are stated in the opinion.

. *James O. Marts,* County and Prosecuting Attorney of Weston County, for plaintiff in error.

The only point in issue is whether a County Commissioner is entitled to the per diem compensation of $5 for each day consumed in going to the county seat to attend a regular or special meeting of the board and in returning therefrom. It is contended on behalf of plaintiff in error, the county, that the statute providing the compensation of County Commissioners (Comp. Stat. 1910, Sec. 1180) does not authorize the payment of such per diem compensation for the time employed in going to and returning from board meetings. Boards of County Commissioners are quasi corporations, the body having a perpetual existence and remaining the same, being continued by members who succeed each other. (State v. Hancock County, 11 O. St. 183; Chapman v. Commissioners, 79 Me. 267; Comm. v. Read, 2 Ashm. (Pa.) 261; 11 Cyc. 380.) An individual commissioner cannot perform the duties of his office except as a component part of the board; he may assist in causing the board to perform

its duties and exercise its corporate powers. Individually he cannot discharge the duties of his office. His individuality is merged in a corporate body, that is the Board of County Commissioners. No one member of the board can alone do or perform an act by which his county will be bound. (Jordan v. Osceola County, 59 Ia. 388, 13 N. W. 344; Commissioners v. Seawell, 3 Okla. 281, 41 Pac. 592; Bouton v. Supervisors, 84 Ill. 384; Gardner v. Dakota County, 21 Minn. 33; Miller v. Smith, 7 Ida. 204, 61 Pac. 824; Ry. Co. v. Comm's., 16 Kan. 302; Rankin v. Jauman, (Ida.) 39 Pac. 1111.) Wherever by statute a duty is imposed or power granted in relation to the office of County Commissioner, such duty is imposed or the power granted to the board, not to the individual commissioner. Section 1165, Compiled Statutes, 1910, is sufficient to sustain the contention of the county in respect to this compensation, since it prohibits a commissioner from receiving compensation for a longer time than four days at a regular session and two days at a special session of the board. Again, Section 1180, which refers to mileage, that is, allows actual traveling expenses in going to and returning from board meetings, seems to imply a denial of the right to compensation for the time so employed. Each commissioner receives an annual salary of $200, and that must be considered as intended to cover every service except the number of days of board sessions for which a per diem compensation is prescribed. (Bruner v. Madison County, 111 Ill. 11; Supervisors v. Ellis, 59 N. Y. 620; VanSicklen v. Supervisors, 32 Hun, 62; Ewing v. Ainger, 97 Mich. 381, 56 N. W. 767; Cook County v. Wren, 43 Ill. App. 388; McCollom v. Shaw, 51 N. E. 488; Miller v. Smith, supra.)

*William B. Ross,* for defendant in error.

In none of the cases cited in the brief of counsel for plaintiff in error was the question here involved determined. The question depends solely upon the construction of the statute. It is clear that when a commissioner is engaged in traveling to and returning from a meeting of the board he

is not employed upon his own business, and the business must be that of the public. Where counties are as large as in this state, and commissioners are selected from different parts of the county, often many miles distant from the county seat, it is not to be expected that they should spend several days each month going to and returning from the county seat without compensation. The mileage, or actual expenses provided by the statute, does not compensate for the time employed in going to and returning from the meetings. Such expenses would not be provided for except upon the theory that he was engaged in performing the duties of his office while so traveling. It is one of the duties of the office of commissioner to attend board meetings, and therefore the time employed in going to and returning from the meeting is time employed in discharging the duties of his office. The small annual salary was not intended to compensate for time spent in going to and returning from the place of the board meetings. If it was so intended it would be paid only to members who resided away from the county seat. It is submitted that under a reasonable and proper construction of the statute prescribing the compensation the commissioners are entitled to the per diem for the time necessarily employed in going from their homes to and returning from each regular and special meeting of the board.

POTTER, JUSTICE.

The same question is presented in these three cases and they were argued together. Each action was brought by the County of Weston in the name by which it is authorized to sue and be sued to recover from the defendant money alleged to have been illegally paid to him out of the county treasury as compensation for his services as County Commissioner from January 6, 1907, to December 31, 1908, inclusive. In each case a general demurrer to the petition was sustained, the plaintiff thereupon elected to stand upon the petition, and a judgment was rendered dismissing the action. The cases are here on error. From the allegations of the petition, which are substantially the same in each

case, it appears that during the period above mentioned the defendant was a County Commissioner of said county, and that upon a claim presented by him and allowed by the Board of County Commissioners he was paid the amount sued for as compensation at the rate of five dollars per day for. the time consumed in going from his home to the county seat to attend the regular and special meetings of the board, and in returning to his home from said meetings. There being no allegation to the contrary, it is to be assumed that the time for which such payment was made was actually and necessarily employed for the purpose stated, and we understand that fact to be conceded. We understand also and shall assume that such payment was made for only once going to and returning from the county seat on the occasion of each meeting attended by the defendant. Therefore the question to be decided is whether for the time so employed a County Commissioner is entitled to the per diem compensation allowed him by statute "for each day actually employed in the discharge of the duties of his office."

The powers of a county as a body politic and corporate are exercised by a Board of County Commissioners consisting of three qualified electors. (Comp. Stat., Secs. 1068, 1162.) The counties of the state are divided into four classes according to assessed valuation of taxable property. In first and second class counties the board is required to meet at the county seat on the first Tuesday of each month, and in third and fourth class counties on the first Tuesday of January, April, July and October, and in a county of either class at such other times as may be required by existing provisions of law. It is further provided that the board in first and second class counties shall not meet oftener than once a month, and in third and fourth class counties not oftener than once in every two months, except for the purpose of providing for the drawing of jurors, or to comply with the law relating to the assessment, levy and collection of taxes, or when in their discretion it may be necessary for the transaction of urgent county business.

(Id., Secs. 1163, 1164.)    The statute also provides that "such commissioners may sit four days or longer at each regular session and two days at each special session, but shall not receive any compensation for any length of time over four days at regular sessions, and over two days at special sessions."    (Id. sec. 1165.)    The compensation of the commissioners is prescribed as follows:

"County Commissioners shall receive an annual salary of two hundred dollars, and in addition thereto, a per diem compensation of five dollars for each day actually employed in the discharge of the duties of his office, and his actual traveling expenses, not exceeding ten cents per mile for each mile actually and necessarily traveled in going to and returning from the meetings of the board, and no other compensation whatever."    (Id. sec. 1180.)

The contention that the per diem compensation received as aforesaid by these defendants was illegally paid them is based mainly upon the proposition that the commissioners can only act for the county as a board and when assembled at a meeting of the board, and that one member of the board cannot alone act for and bind the county.    The rule thus relied on is stated in the brief substantially as follows: That the individual commissioner cannot perform the duties of his office, except that as a component part of the board he may assist in the performance by the board of its duties and the exercise by the board of its corporate powers; that individually he can no more discharge the duties of his office than a single director of a corporation can discharge the duties of such corporation; and that no one member of the board of county commissioners can do or perform any act by which the county will be bound.    For the purposes of the case it may be conceded that the commissioners can only act as a board in transacting the business of the county.    But that principle is not necessarily controlling upon the question of their compensation, for clearly it would be competent for the Legislature to allow a per diem for time actually and necessarily employed upon public business when the

board is not in session, and to allow such compensation for the time actually and necessarily employed in going to and returning from the meetings of the board. Indeed, until the present statute prescribing the compensation of·the commissioners was enacted in 1895, the per diem for going to and returning from board meetings was expressly allowed, in addition to the same per diem compensation for the days consumed by the meetings attended by them, and also mileage for the distance actually and necessarily traveled in going to and returning from the county seat. (Laws 1869, Ch. 4, sec. 10; Comp. Stat. 1876, Ch. 28, sec. 10; Rev. Stat. 1887, sec. 1195.) By an act of March 9, 1882, a further provision was made for their compensation by allowing them an annual salary of two hundred dollars, as well as the per diem and mileage aforesaid. Such salary was expressly declared to be full compensation for all service and expenses of viewing roads and bridges, and attending to the necessities of paupers. (Laws 1882, Ch. 45, sec. 19; Laws 1884, Ch. 42, sec. 1; Rev. Stat. 1887, sec. 1195.)

The principle stated is, however, proper to be considered in determining the meaning and effect of the provision of the present statute allowing the commissioner a per diem compensation of five dollars per day "for each day actually employed in the discharge of the duties of his office." If there is no duty of the office that a county commissioner could possibly perform except when actually in attendance upon a meeting of the board, and the time of such attendance would be all that could actually be employed in the performance of the duty, then it may be that the per diem allowed by the statute would be limited to the time of actual attendance at a session of the board. But if the time actually and necessarily consumed in going to and returning from a meeting is employed in the discharge of· a duty of the office, it must follow that the commissioner is entitled to the per diem for the time so employed. Our duty is to ascertain the intent of the statute by reading it according to the natural and obvious import of the language, without re-

sorting to subtle and forced construction for the purpose of either limiting or extending its operation. (U. S. v. Temple, 105 U. S. 97, 26 L. Ed. 967.) And the question presented depends for its solution upon the proper construction of the statute prescribing the compensation, in connection with other pertinent statutory provisions, if any, and the conditions which must have been considered when the statute was enacted.

In support of the proposition that the per diem is not allowed for the time consumed in going to and returning from the meetings of the board, for the reason that the commissioner is not then engaged in transacting county business, and is not authorized to act as to such business except when the board is in session, counsel for plaintiff cites the following cases: Miller v. Smith, 7 Idaho, 204, 61 Pac. 824; Rankin v. Jauman, 4 Idaho, 394, 39 Pac. 1111; Bruner v. Madison County, 111 Ill. 11; Supervisors v. Ellis, 59 N. Y. 620; Ewing v. Ainger, 97 Mich. 381, 56 N. W. 767. The case of Supervisors v. Ellis involved the right of a supervisor to per diem and mileage while serving upon a committee appointed by the board of supervisors. It was not claimed or held in that case that the supervisor was not performing a duty of his office while serving upon the committee, but the compensation there in question was denied solely upon the ground that the statute did not provide for it, the statutory provision being that each supervisor "shall be entitled to charge and receive three dollars per day for each full day's services during the sessions of the board, besides mileage now allowed by law; but such supervisor shall not be entitled to receive any other compensation whatever, except as the same is specially provided for by law." The court said that no special provision of law had been shown giving any other or different compensation for the service of the supervisor to his county, and he was therefore limited in amount to the rate of three dollars per day, and limited as to number of days to full days' services during the sessions of the board. The decision was based entirely upon the provision

of the statute fixing the rate of compensation. That this is so, and that the case is not authority for the proposition that a supervisor could perform no duty except at a session of the board is illustrated by later cases in that state. (Van Siklen v. Queens Co., 32 Hun, 62; Wallace v. Jones, 122 App. Div. 497, 107 N. Y. Supp. 288.) It appears from the statutes considered in those cases that after Supervisors v. Ellis was decided the Legislature of New York, in 1876, changed the law so as to provide for the payment of the per diem not only for the time occupied by the sessions of the board, but also "for services actually rendered in any investigation or other duty authorized by law and directed by the board, but performed when the board shall not be in session." And that in 1881 the per diem was by statute again limited to each day's actual attendance at the sessions of the board, and this statute was held to operate as a repeal of the act of 1876 in Van Sicklen v. Queens Co., supra. The statute seems to have been again changed so as to provide expressly for such compensation while actually engaged in any investigation or other duty "which may be lawfully committed to him by the board, except for services rendered when the board is in session." This was held in Wallace v. Jones, supra, to require the duty to have been committed to the supervisor by the board to entitle him to the per diem when the board was not in session. The court say: "Important and valuable services seem to have been rendered by the defendants respectively to the people of the county, * * * but the minutes of the board are barren of evidence that a single matter of investigation or other duty was committed to any of them lawfully or otherwise. * * * The record alone can show that a matter of special duty has been lawfully committed to a supervisor." The claim was for committee work.

The case of Bruner v. Madison Co., 111 Ill. 11, involved the consideration of a claim of a supervisor for his services as ex-officio overseer of the poor in his township. It appears from the opinion that in some counties of the state the sup-

port of paupers was a county charge while in others it was a town charge, and that in Madison County such support was a county charge. The supervisor, though elected as a town officer, was also a member of the county board, and, as such, a county officer. The supervisor and overseer of the poor, as a town officer, was entitled by statute to receive for his services two dollars per day when attending to business out of town, and one dollar for town business in his town. The court said that if the services of the supervisor in looking after the poor of his town were services of the town and related to town business, he would be entitled to the compensation named in the statute, but that in the county in question it was county business, and the county was liable for the payment of compensation to the supervisor only under the statute providing that a member of the board of supervisors shall receive two dollars and fifty cents per day "for the time actually and necessarily engaged in the discharge of his duties *as a member of such board.*" So it was held that in taking charge of the poor of his town the supervisor did not perform services as a member of the board or act as such. The court, however, said further, referring to the provision above quoted for the compensation of members of the board: "The language here used does not necessarily, or even by implication, restrict this per diem allowance to the time actually engaged in attendance upon the sessions of the board. It may embrace time engaged as a member of a committee, or in the discharge of any other duty he owes to his county as a member of the board entrusted with the management of its financial affairs." There was an apparent injustice in the statute giving the overseer of the poor a per diem if he performed his duties for the town, and failing to so provide when the services were rendered for the county; and the court referred to that matter, but stated that the court was powerless to supply the defect in the legislation. So far as this case is in point it would seem to be opposed to the contention here made on behalf of the county.

In Ewing v. Ainger, supra, it appeared that the statute of Michigan allowed a supervisor three dollars per day for his services and expenses in attending the meetings of the board, and mileage for going to and returning from the place of meeting, which was declared to be intended as full compensation for all services rendered and expenses in attending meetings, and for all services and expenses while acting upon any committee during the session of the board. It was held that the statute did not prohibit the supervisor from taking pay for committee work while the board was in session, but was intended to fix the amount of compensation for such work, and the court said: "But for the words, 'during the session of said board,' it is evident that supervisors who were absent from the board upon committee work, during the session of the board, could not be compensated, and the words 'during the session of said board' provide for such compensation, but cannot be said to authorize the payment for committee work while the board is not in session. * * * It is said that members of the boards of supervisors are called upon to do much extra work while the board is not in session, such as acting upon building committees, etc. This may be true, and, if payment should be made for such services, the Legislature may provide therefor; but it has not done so by this statute." It is clear that the Michigan case was not decided upon the theory that a supervisor could perform no service except at a meeting of the board.

The Idaho cases above cited are much relied on, for they hold that the per diem allowed by the statute of that state is only chargeable for the time the board is actually in session; and in Rankin v. Jauman, supra, the court said that "county commissioners can only act, or claim compensation as such while acting, as a board. The law does not contemplate that members of the board may perform services for the county as individuals and then charge for it as commissioners." The statute, however, was quite different from that of this state. It provided as follows: "County commissioners of each county shall receive the sum of six dollars for each

day actually engaged in transacting county business, and twenty cents per mile for each mile necessarily traveled in transacting county business." The claims considered were for per diem and mileage or expenses in looking after roads and bridges, in performing which service it was held that the commissioner had attempted to perform the duties of road overseer. It is evident that the cases were decided upon a construction of the provision of the statute allowing the per diem when "actually engaged in transacting county business," and that it was strictly construed to apply only when the commissioners were assembled at a meeting at which time only county business could be transacted.

In other states, where the statute fixing the compensation differed from that considered in the Idaho cases, and did not in terms, as in New York, restrict the compensation to the time covered by meetings of the board, the courts do not seem to have regarded the inability of a single member of the board to bind the county, or the necessity of action by the board as such to transact county business, as controlling upon the question of the right to per diem compensation. Thus, in Utah, the statute provided that a member of the board, or court, as it is called in that state, should receive four dollars for each day actually employed in attending to business pertaining to the county court, together with mileage at the rate of 20 cents per mile, in going only, from his residence to the county seat at each session of the court attended by him. As the mileage was clearly allowed only for going to the county seat to attend a session, it was held not payable for travel when he was attending to other official duties. But it was also held that the per diem allowance was not limited to the time employed in attending the sessions of the court, but was allowed as well for services in looking after work on roads and bridges, public buildings and grounds, under the direction of the county court. The court say: "It is doubtless true that the business of the county is such as to require the attendance of the members of the court between the dates of its regular or special ses-

sions; and committees may be appointed to attend to such business, and report at its regular session, and such committee would be entitled to compensation for such services, at the rate of four dollars per day for the time actually and necessarily employed, but without mileage or expenses." (Christopherson v. Stanton, 13 Utah, 85, 44 Pac. 648. See also Bartch v. Cutler, 6 Utah, 409, 24 Pac. 526.)

The statute in Kansas provided that "each member of the board of county commissioners * * * shall receive as full compensation for his services for the county the sum of three dollars per day, and shall each be allowed and receive five cents per mile for each mile actually and necessarily traveled in the transaction of any of the duties of said office." (Gen. St. 1909, sec. 3676.) A commissioner had received the statutory compensation for services outside board meetings in giving special attention to roads and bridges under a rule of the board making each commissioner from outside the county seat chairman of the committee on roads and bridges for his district. An action was brought to remove the commissioner from office, one of the grounds alleged for such removal being corruption in the matter of his salary and mileage. The court, in deciding the case, remarked that the services aforesaid were not rendered by the defendant as a private individual for the board, or as an employee of the board; that the board itself acted for the county by and through him; and that he acted solely in the capacity of county commissioner, representing the county in the conduct and management of its business affairs; that he was not usurping any of the functions of road overseer or township trustee; and that the efficient discharge of its duties requires the board to perform numerous official services outside of board sessions. The court then say: "The statute quoted does not restrict compensation to salary for services rendered at board meetings only, and there is no statute of that character in this state, as there is in some states. Therefore the defendant was entitled to $3 per day for whatever time he necessarily consumed, and five cents

per mile for each mile actually and necessarily traveled, in looking after county bridge affairs. There is no doubt that the board of county commissioners is an entirety, and must act as such. Its authority cannot be delegated to a single member, and an individual member cannot bind the county. But these principles are beside the question. As a practical matter a certain division of labor is indispensable to the transaction of the public business at board meetings, and if done in absolute good faith the same division may be extended to certain classes of work which must be performed outside of board meetings. * * * Action by the board is required in each instance, but the joint observation and combined participation of all the members would be superfluous. If in such a case the board be guided by the sole motive of rendering faithful and efficient public service within the scope of its lawful powers, each member is entitled to compensation according to the statute." The Idaho cases are referred to in the opinion, but not followed. (State v. Kennedy, 82 Kan. 373, 108 Pac. 837.)

Under a statute of Kentucky providing a per diem for members of the fiscal court of a county for each day they are engaged in holding fiscal court, and where a system of free turnpikes is maintained an extra allowance for attending committee meetings, it was held that in counties not having a system of free turnpikes, the compensation was not payable for attendance upon committee meetings. (Boyd Co. v. Arthur, 118 Ky. 932, 82 S. W. 613.) But in counties where such a system prevailed compensation for such service was held to be properly paid; and the statute was liberally construed to carry out its evident intent. (Flowers v. Logan County, 138 Ky. 59, 127 S. W. 512, 137 Am. St. Rep. 347.) The question in either case, as considered in the Kentucky cases, was not whether the member owed the performance of a duty outside of board meetings, but what the statute provided as to compensation. And so in Virginia, without denying that a supervisor renders a beneficial service and performs an official duty in attending upon com-

mittees, it was held that he was not entitled to the per diem for such work for the reason that the statute allowed such per diem only for the time he attended a board meeting, and mileage for going to and returning from the place of meeting. It is significant that the statute of Virginia provided that when mileage is allowed by the board for traveling to and from the meeting, no per diem shall be allowed for the time occupied in so traveling. (Johnson v. Black, 103 Va. 477, 49 S. E. 633, 68 L. R. A. 264, 106 Am. St. Rep. 890.)

Coming to a consideration of our own statute we are to determine whether it covers time that is actually taken and necessarily required to go to the county seat to attend a board meeting and thereafter to return home. During that time is the commissioner employed in the discharge of the duties of his office? The answer to the question does not depend, we think, upon whether he may individually bind the county, or whether county business can be transacted only by the board when assembled as such. When a public officer is required by law to travel away from his home or the place of his official residence to perform an official act, such travel and also in returning is on public business, though more time may be necessarily occupied in such travel than in the actual transaction of the business which has required it. And we do not regard it as a misuse of language to say that all the time so occupied is employed in performing the duty imposed. It is only upon that principle that mileage or actual traveling expenses are allowed by law to a public officer. As said in U. S. v. Shields, 153 U. S. 88, 90, 14 Sup. Ct. 735, 736, 38 L. Ed. 645: "Mileage allowed to public officials involves the idea that the travel is performed in the public service, or in an official capacity." (See also U. S. v. Temple, supra; U. S. v. Smith, 158 U. S. 346, 15 Sup. Ct. 846, 39 L. Ed. 1011.) "Public business is the foundation on which mileage rests." (Steele v. U. S., 30 Ct. Cls. 7.) In Baker v. U. S., 19 Ct. Cls. 288, it appeared that certain naval officers were ordered home from abroad because there were not sufficient quarters for them, and it

was held that the travel home was public business entitling the officers to mileage. Mileage is "compensation allowed by law to officers for their trouble and expenses in traveling on public business." (Bouvier's Law Dict.)

It is, of course, essential that authority for the payment of compensation by the day or otherwise for time employed in traveling upon public business or for any service by a public officer be found in the statute. The statute in question is not like one prescribing fees for particular official acts. It prescribes a daily compensation for time employed, and it was unquestionably intended that, in addition to the annual salary allowed to each commissioner, he should receive a compensation for the discharge of the duties of his office measured by the time actually and necessarily employed therein. It cannot be doubted that it is the duty of a county commissioner to attend the regular and special meetings of the board, and for that purpose to go to the county seat, if he resides elsewhere in the county. Our counties are large, and it is not required that the commissioners shall be residents of the county seat, or that they shall reside there during their respective terms of office. It is safe to say that as a rule a majority of them do not reside at the county seat, and that it is frequently the case, perhaps more often than otherwise, that a commissioner resides at such a distance from the county seat that it requires a day if not longer to reach it by the usual route and means of travel. These conditions were well known and must have been considered when the statute was enacted. The time employed by a commissioner in discharging his duty to attend a meeting of the board necessarily includes not only the days upon which he attends the meeting, but as well those occupied in going to and returning from the place of the meeting. The necessity of returning is caused by the duty to attend. This is recognized by the statute, for it provides for the payment of the commissioner's actual traveling expenses incurred in going to and returning from the meetings of the board. It is not to be supposed that such ex-

penses would have been declared a charge upon the county treasury, except upon the theory that they are incurred in the performance of a duty of the office.

We believe it to be a rule of the Federal government that unless the statute or terms of employment expressly or by clear implication provide otherwise as to compensation, an officer or employee who is paid by the day is during his term of office, or the period of his employment, entitled to the daily pay while traveling in the performance of his duty. (See Wertz v. U. S., 40 Ct. Cls. 397.) By a decision of the Comptroller of the Treasury of April 11, 1905, it was held that a special employee with compensation of $4 per day "when actually employed," and actual and necessary traveling expenses "when absent from his legal residence on duty," who was transferred from his legal residence to another place, for the same kind of duty, was on duty and absent from his legal residence while performing said travel, and therefore entitled to his per diem compensation and traveling expenses. (11 Comp. Dec. 614.) And in a decision of April 12, 1911, it was held that a chief nurse in the Navy while traveling under orders from San Francisco to the Philippine Islands, where she was to report for duty, was engaged in "serving beyond the limits of the States comprising the Union," within the meaning of the statute, giving such a nurse ten dollars per month additional salary when engaged in such service. (17 Comp. Dec. 766.) These decisions are cited merely to show the view taken by the accounting officers of the United States government.

In Chapin v. Willcox, 114 Cal. 498, 46 Pac. 457, a statute was considered which provided as follows: "Supervisors shall receive seven dollars per diem, and twenty-five cents per mile in traveling to and from their respective residences to the county seat. All of which compensation in the aggregate shall not exceed four hundred dollars per annum each." The question was whether the limitation of four hundred dollars applied to the mileage as well as to the per diem. It was held that the supervisor could only receive in

any one year the sum of four hundred dollars including mileage. In discussing the question, for the purpose of showing that the allowance for travel was included as part of the compensation, the court said: "Traveling to and from his residence to the county seat is as much a part of the services required of him as is the sitting in the council chamber of the board, and the compensation for these services has been fixed by the Legislature in the foregoing language." In Howes v. Abbott, 78 Cal., 270, 20 Pac. 572, in considering a claim for mileage for going to and returning from the meeting of the board of supervisors during each day of a session lasting eight days, it was held that the supervisor was entitled only to one mileage each way for the session. The court said: "In going to a place of meeting at the beginning of a session, and in returning to his home at the end of it, he is evidently 'traveling on public business.' But, if during a session he makes daily visits to his home, such visits must be deemed to have been made for his own convenience, comfort, or economy, or to attend to his own private affairs, and not on public business."

In the case of Albright v. County of Bedford, 106 Pa. St. 582, the court was called upon to determine whether county commissioners were entitled to charge the county for their actual expenses incurred in traveling to divers bridge lettings, and to hold appeals in different parts of the county. The statute provided that the commissioners should be paid for each and every day necessarily employed by them, or either of them, in attending to the duties of their offices. It fairly appears from the report of the case that the commissioners had been paid the per diem for the days employed in traveling to different parts of the county, and were claiming in addition thereto their actual expenses. The right to such expenses was denied on the ground that the statute did not provide for their payment out of the county treasury. The court said: "The statute makes no provision for the payment of such items out of the county treasury. Whether he (the commissioner) goes to the county seat or whether

he goes out of it, to discharge his official duties, the law prescribes a daily pay only. This is not in addition to his expenses. They are matters for which the law does not provide, and for which the county is not liable." This language is to be understood, we think, as recognizing the right to the daily pay while the commissioner was engaged in traveling for the purpose of discharging his duties, while denying the liability of the county to pay his expenses.

A similar case arose in Illinois. (County of Cook v. Wren, 43 Ill. App. 388.) The compensation of county commissioners was fixed at a stated sum per day "for actual service." It appeared that unless the commissioner was allowed to retain money paid him for his expenses in traveling he had received more than he could possibly have earned. No question was raised as to the right to receive the per diem for the days employed in traveling to visit and inspect the different county institutions, but the right to such per diem while traveling to perform an official duty seems to have been recognized and upheld. The right of the officer to have his expenses paid was denied as in the Pennsylvania case above cited. The court say: "So far as the proper discharge of official duty in the management of county affairs and county institutions may require the commissioner to travel from one part of the county to another, or from his residence in one part of the county to a meeting of the board or a committee thereof in another part of the county, such acts, whatever the personal expense they entail, must be discharged without other recompense than is fixed by law for the performance of the duties of the office. He who takes the office takes it *cum onere*. He knows that the duties of it will require him to travel to different parts of the county and he agrees to assume those duties for a compensation of $5 per day. In such case the number of days of actual service multiplied by five must show the amount of salary that he is legally entitled to receive for a given period of the term of office."

A statute of Iowa providing for a shorthand reporter for the Superior Court fixed his compensation at "five dollars

a day for the time actually employed." (Code 1897, sec. 275.) Construing that language the court referred to the statute requiring the shorthand reporter to be in attendance upon the court whenever ordered by the judge, which might require him to be in attendance at times when not engaged in taking evidence. And it was held that the word "employed" was not intended to restrict the compensation to the time actually engaged in reporting testimony or the proceedings. To hold otherwise, the court said, would be to declare that a reporter may be required to attend upon the court days, weeks, and months without compensation. (Ferguson v. Pottawattamie County, 126 Ia. 108, 101 N. W. 733.)

We do not think it should be assumed that the Legislature intended to make such a discrimination between a commissioner residing at or near the county seat and one who must consume an entire day or longer preceding the meeting and again at its close, in order to attend the same, as to require the latter without any compensation to devote more time than the former to the discharge of the same duties of the office. Such a provision if made would tend to concentrate the management of the county affairs in officials conveniently located for attending meetings, or require those residing at a distance to accept the office at a sacrifice of time without remuneration, which would be unreasonable because not demanded of all. It would nevertheless be competent, no doubt, for the statute to so provide. But instead of doing so, there seems to be evidence upon the face of the statute of an intention to so provide as to the compensation of the several commissioners as to place them upon an equality in that respect, so far as practicable. We fail to observe in the present statute, by the employment of more general language, a purpose to take away the right expressly given by the former statute to the per diem allowance for the time actually employed in going to and returning from the county seat. If anything, the statute in its present form is broader than it was before. Prior to its enactment the per diem was allowed for the time of actual attendance at the

meetings of the board, "including the time necessary in going to and returning from the same." It would be a forced and unnatural construction to read the statute as it now exists so as to limit its application to the days of actual attendance, especially when the limitation upon the compensation for such actual attendance under another section of the statute is considered.

Language less clear than that found in this statute has been held to include the time employed in the necessary travel to attend and return. A case to that effect is cited by counsel for defendants. (State ex rel. v. Briggs, 5 N. Dak. 69, 63 N. W. 206.) In that case it appeared that the relator was a member of the board of trustees of the state penitentiary. His compensation was fixed by statute at three dollars per day for each day employed in attendance upon the sessions of the board, and all traveling expenses necessarily incurred therein. It was held that he was entitled to the per diem for each day actually spent in "attendance" upon the sessions of the board, including the time actually and necessarily spent in traveling by the usual and direct route from his place of residence to and from the place where the sessions are held. The court say: "The member residing at a distance from the place of meeting is not engaged in his own private business while traveling to and from the place of meeting, but is then employed in and about the matter of his 'attendance' upon a session."

It is, however, contended that the provision for the payment of the actual expenses of the travel to and from the meetings of the board, and the provision for an annual salary of two hundred dollars, show an intention to limit the per diem to the days of actual attendance at board meetings. We do not think so. The salary is allowed to each commissioner whether he resides at the county seat or not, and the payment of actual expenses cannot be held to have been intended as compensation for the time employed. There would be more force in the argument if the payment of mileage regardless of the amount expended had been

provided for. We fail to see in these provisions anything permitting a construction of the provision for the per diem which would limit the effect and the natural and obvious meaning of the language employed.

It is further contended that the provision of section 1165 prohibiting the receiving of any compensation for any length of time over four days at regular sessions, and over two days at special sessions, discloses an intention to allow the per diem for such days only as the board may have been in session. It is argued that by allowing the per diem for a day each in going and returning, though that time may be actually so employed, the commissioner receiving it would receive nothing for the days of a special session, and likewise for at least two days of a regular session if it consumed four days. There would be much force in this contention if counsel's construction of section 1165 could be sustained. But we cannot agree with his construction of that section. The limitation therein stated applies only to the days of the session. The provision is that no compensation shall be received for any length of time over four days *at* regular sessions, and over two days *at* special sessions, clearly meaning days of attendance, and clearly intended only to restrict the compensation for actual attendance at a regular or special meeting to the number of days specified. The purpose of the provision is evidently to insure economy and prompt dispatch of business respecting a matter over which the commissioners have control, viz: the length of their sessions, by inducing them through the denial of additional compensation, to confine the sessions to the specified period. Yet their work is not hampered, for if necessary a regular session may be continued longer than four days, and ample provision seems to be made for holding special sessions. Again, the first part of the section speaks only of days upon which the commissioners may sit at regular and special sessions, and the latter part obviously refers to the same thing and can therefore be understood only as limiting the compensation to the stated number of

days during a session. That this is the effect of the limitation, and that it was not intended to include the time employed before and after a session in going to and returning from the county seat, or to deny the per diem compensation for the time so employed, is clearly demonstrated by the history of the legislation.

The provision first appeared in the same act which prescribed the compensation and expressly allowed the per diem not only for the time of attendance but for the time employed in going to and returning from the meetings of the board. (Laws 1869, Ch. 4, secs. 9 and 10; Comp Stat., 1876, Ch. 28, Art. I, secs. 9 and 10.) And the two provisions, one prescribing such compensation, and the other prohibiting the payment of the same for any length of time over four days at regular sessions, were continued in the statutes until the act of 1895 (Laws 1895, Ch. 76), which provided for the payment of the per diem generally for the time actually employed in the discharge of the duties of the office. The mere statement of these facts is sufficient to show that it was not originally intended by the limitation upon the compensation "at regular sessions" to deny the right to the daily compensation for the time employed in going to and returning from such sessions. When the statute was enacted there were but five counties in the then Territory, and but one line of railroad, the Union Pacific, and but five more counties had been organized when the act of 1895 was passed, and then in at least three counties the county seat was not located upon any line of railroad. By the usual means of travel a commissioner might have been required to consume several days in going to and returning from a meeting, and the time so consumed might have exceeded the four days to which the compensation at regular sessions was limited. To have construed the limitation as applying to time consumed in reaching and returning from the county seat might have had the effect of denying any compensation for the days of actual attendance, and perhaps also for part of the time necessarily consumed in going and returning for the purpose of such attendance, and

surely that was not contemplated. It is true that during the period aforesaid and until 1905 the compensation was limited only to four days at regular sessions, and that in 1905 (Laws 1905, Ch. 84) the provision was added limiting the compensation to two days at special sessions. There never was any reason for such limitation at special sessions, for at all times the length of such sessions has been confined by the statute to two days. Unless the addition by the act of 1905 of the provision that compensation shall not be received for more than two days at special sessions operated to change the original purpose of the limitation, there is nothing in the entire legislation that does so. Such added provision is, we think, manifestly insufficient to disclose a new purpose in continuing the restriction upon the compensation to be received for attending the sessions. Nor will the language in which such limitation is expressed permit of a construction making it cover anything more than time occupied in actual attendance during the days of a session. Had the Legislature desired to apply the limitation to time employed in traveling to and from the sessions of the board, or to exclude such time from the provision prescribing the per diem compensation, it is fair to presume that the intention to do so would have been expressed in apt language. Instead of that the compensation is prescribed in general language necessarily including time actually employed in going to and returning from a meeting, and its effect is not destroyed by anything found in section 1165.

As above indicated, our conclusion is that county commissioners are entitled to the per diem compensation prescribed by the statute, for the time actually and necessarily employed by them in going from their respective homes to the county seat to attend the several regular and special meetings of the board, and in returning therefrom; and it follows that the allegations of the petition are insufficient to show that these defendants were not entitled to the compensation received by them. The demurrer was therefore properly sustained, and the judgment must be affirmed.

BEARD, C. J., and SCOTT, J., concur.